IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Matthew Thomas Mcgrath,            Case No. 3:09 CV 1686

           Plaintiff,            MEMORANDUM OPINION
           AND ORDER

     -vs-

           JUDGE JACK ZOUHARY

Maggie Beightler, et al.,

           Defendants.

**INTRODUCTION**

*Pro se* Plaintiff Matthew Mcgrath, a prisoner in state custody, filed an Amended Complaint ("Complaint") seeking damages from Defendants, employees of the Marion Correctional Institution (MCI), under 42 U.S.C. §§ 1983, 1985, and 1986 and several state causes of action (Doc. No. 29). Plaintiff claims he was subjected to cruel and unusual punishment by Defendants in violation of the Eighth Amendment and the Ohio Constitution.

Defendants Maggie Beightler, the Warden of MCI, Mr. Fox, MCI Operations Manager, and Andy Parker, a male nurse, filed a Motion to Dismiss, pursuant to Federal Civil Rule 12(b)(6), for failure to state a claim (Doc. No. 19). Plaintiff filed an Opposition (Doc. No. 20). Also pending are Plaintiff's Motion for Default Judgment (Doc. No. 38) with Defendants' Opposition (Doc. No. 42); Plaintiff's unopposed Motion for Appointment of Counsel (Doc. No. 39); Defendants' Motion to Stay Discovery (Doc. No. 50); and Plaintiff's Motion to Strike Objection (Doc. No. 51).

The case was referred to Magistrate Judge Vernelis Armstrong for a Report and Recommendation (R&R) which recommends the Court deny the Motion to Dismiss, deny the Motion for Default Judgment, and hold in abeyance the Motion for Appointment of Counsel (Doc. No. 43). Defendant filed an Objection (Doc. No. 47) to the R&R.

In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has reviewed the Magistrate's findings *de novo*. For the reasons set forth below, this Court declines to adopt the Magistrate's recommendations in part. This Court finds it appropriate to grant the Motion to Dismiss and the remaining Motions are each denied as moot.

## BACKGROUND

This Court recited the factual background of this case in a previous Order dismissing Defendant Ohio Department of Rehabilitation and Correction from the action (Doc. No. 10, p. 1-2). Briefly, Plaintiff, then an inmate at MCI, was punched in the jaw by a fellow inmate on a Friday afternoon. Plaintiff was taken to the MCI medical department and evaluated. Believing his jaw had been broken, Plaintiff requested an immediate x-ray be taken. Andy Parker, the MCI nurse treating Plaintiff, explained that no x-ray technician was available and that Petitioner would be placed on the list to be x-rayed on Monday. Plaintiff was given Tylenol for pain and was placed in segregation for the weekend. During the weekend, Defendants Beightler and Fox checked on Plaintiff, who requested immediate transfer to a hospital. Plaintiff was told he would be x-rayed on Monday. An x-ray on Monday revealed that Plaintiff had a fractured jaw. Surgery was performed successfully on Tuesday evening.

Plaintiff's Complaint generally states four grounds for relief:

- Cruel and unusual punishment in violation of 42 U.S.C. §§ 1983, 1985, and 1986;

- Cruel and unusual punishment in violation of the Ohio Constitution;

- Dereliction of duties and interference with Plaintiff's civil rights in violation of R.C. §§ 2921.44 and 2921.45; and,

- Intentional infliction of emotional distress.

## STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the court is to test the legal sufficiency of the complaint. In scrutinizing a complaint, the court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the complaint in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).

Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). This standard for Rule 12(b)(6) applies to "all civil actions." *Id.* at n.4 (internal quotation omitted).

3

Under Federal Civil Rule 10(c), "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." In considering a motion to dismiss for failure to state a claim, a district court is limited to facts stated in the complaint or in documents attached to the complaint or incorporated into the complaint by reference. *Katt v. Titan Acquisitions, Ltd.*, 133 F. Supp. 2d 632, 637 (M.D. Tenn. 2000) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2nd Cir. 1991). Documents attached to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

A complaint filed *pro se* is "to be liberally construed," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle*, 429 U.S. at 106) (internal quotation marks omitted).

**ANALYSIS**

*Delay of Medical Treatment*

Generally, the Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medial needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle*, 429 U.S. at 104). A prison official's deliberate indifference violates a prisoner's Eighth Amendment right when "the indifference is manifested by prison doctors in their response to the prisoner's needs or by . . . intentionally denying or delaying access to medical care" for a serious medical need. *Id.* In considering claims of deliberate indifference, the court must be mindful of the wide discretion allowed prison medical officials in their treatment of prisoners under their care. *See Westlake v.*

4

*Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) (citing *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972)). As a result of this latitude, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Carter v. Prasad*, 2009 WL 349355, *2 (E.D. Mich. 2009) (quoting *Westlake*, 537 F.2d at 860).

The test for "deliberate indifference" in denying or delaying medical care contains both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Both must exist for an Eighth Amendment claim to prevail.

The objective component requires the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834. As the Supreme Court explained in *Farmer*, "[t]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* When medical treatment has been delayed, as opposed to denied, the objective component of a "sufficiently serious" medical need has been further defined by the Sixth Circuit. Following the First, Third, and Eleventh Circuits, the court in *Napier* stated that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier*, 238 F.3d at 742 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)).

The subjective component requires the plaintiff to show that the prison official possessed "a sufficiently culpable state of mind in denying medical care." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th. Cir. 2005). In order to make this showing, the plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial

5

risk to the prisoner, that he or she did in fact draw the inference, and that he or she then disregarded that risk." *Guerrero v. Corrections Corp. of Am.*, 2010 WL 2991535, *7 (N.D. Ohio 2010) (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). The fact that a prisoner might disagree with the course of treatment or that treatment might be negligently administered by prison medical personnel does not rise to a constitutional violation. *Jennings v. Al-Dabagh*, 275 F. Supp. 2d 863, 870 (E.D. Mich. 2003) (citing *Estelle*, 429 U.S. at 105-06).

***Objective Component -- "Sufficiently Serious" Medical Need***

The crux of Plaintiff's claim under 42 U.S.C. §§ 1983, 1985, and 1986 is that he was forced to wait in "excruciating pain" from Friday to Monday for an x-ray on his jaw. In his Opposition, Plaintiff states "'I had to wait,' that one statement tells it all." (Doc. No. 20, p. 5) (punctuation modified from original). Attached to the Complaint are his medical records from the MCI medical center and the Ohio State University (OSU) hospital. Based on these records, Plaintiff likely endured some discomfort and did wait over the weekend for an x-ray. Nonetheless, the Complaint fails to plead any facts that establish, pursuant to *Napier*, "detrimental effect" from the wait.

First, the medical records Plaintiff attached to the Complaint do not support his claim that Defendants' delay had a detrimental effect on Plaintiff. Neither the MCI medical records nor the OSU hospital records attached to, and referenced in, the Complaint include any mention of Plaintiff's "excruciating pain" or any indication that Plaintiff requested or was provided any pain medication other than Tylenol (Doc. No. 29, ¶¶ 12, 16, pp. 15-19). Defendant Parker, the nurse who originally treated Plaintiff in the MCI medical facility, noted a cut in Plaintiff's mouth, a small cut on his elbow, and an abrasion near his knee. Plaintiff was given Tylenol for pain and water/peroxide mouth rinse

6

(Doc. No. 29, p. 17). On Monday, the OSU hospital emergency assessment notes that Plaintiff's treatment consisted only of ice to the jaw and Tylenol.

Second, the facts in the OSU hospital "Referral for Continuity Patient of Care" attached to the Complaint refute any suggestion that delaying treatment had a detrimental effect. While Plaintiff was x-rayed at some point on Monday, revealing the broken jaw, the treating physicians at the OSU hospital did not perform surgery on Plaintiff's jaw until Tuesday evening (Doc. No. 29, p. 15). Certainly the "delay" in taking Plaintiff to the hospital for an x-ray is not actionable when the OSU hospital physicians waited yet another full day before performing the surgery. *Id.*

Third, the *Napier* case, from which the objective standard is quoted, is instructive. The plaintiff in *Napier* was an arrestee claiming Section 1983 violations for cruel and unusual punishment. Napier suffered from complete kidney failure and required dialysis every Monday, Wednesday, and Friday. Napier was arrested on a Thursday and was prevented from attending his normally scheduled dialysis on Friday despite prison officials' knowledge of his appointment. Napier even claimed that, at one point during his incarceration, prison officials "threatened to chain him to the wall in the 'drunk tank' if he did not quit knocking on the glass of the cell in an attempt to alert someone of his need to receive medical attention." *Napier*, 238 F.3d at 741.

The court in Napier granted summary judgment to defendant prison officials, explaining that because Napier did not offer any medical evidence that he suffered a detrimental effect from being kept from his scheduled dialysis, the alleged deprivation of medical care was not sufficiently serious. *Id.* at 743. While the court also considered Napier's voluntary choices to skip other dialysis appointments before and after his incarceration, the court reasoned that because Napier could not pinpoint any medical detriment from missing the Friday appointment, summary judgment was proper.

7

Here, the Complaint and attached medical records similarly fail to contain sufficient factual support identifying any medical detriment for the weekend delay in treatment. Moreover, Defendants here, unlike defendants in *Napier*, did provide successful treatment for Plaintiff's injury, albeit on a timeline that was not according to Plaintiff's desired schedule. He was promptly evaluated by the prison medical staff, given pain medication, and scheduled for the next available x-ray time. Once x-rayed, the hospital physicians themselves did not perform surgery for yet another day. The Complaint does not allege the delay in receiving the x-ray caused any other detriment. If a one day delay of treatment for a condition as serious as complete kidney failure was not sufficiently detrimental to plaintiff in *Napier*, the facts pled by this Complaint do not give rise to a "facially plausible" cause of action.

Accordingly, examining the facts as presented in the Complaint, mindful of the standard of review and the objective standard for deliberate indifference, Plaintiff has not "place[d] verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment" necessary to state a cause of action for cruel and unusual punishment. *Napier*, 238 F.3d at 742.

***Subjective Component -- "Sufficiently Culpable" State of Mind***

Similarly, a liberal reading of the facts presented in the Complaint does not support a reasonable inference that Defendants had a sufficiently culpable state of mind for deliberate indifference. In fact, the Complaint undermines his cause of action in light of the standards set forth above.

The first three claims in the Complaint state Defendants "negligently failed" or "refused to take the necessary steps" to prevent Plaintiff's injuries (Doc. No. 29, ¶ 22). However, neither of these gives rise to deliberate indifference. As noted above, negligent medical treatment does not equate to

8

a cause of action for cruel and unusual punishment. "[T]reatment [that] might be negligently administered by prison medical personnel does not rise to a constitutional violation." *Jennings*, 275 F. Supp. 2d at 870. Also, it is undisputed Defendants did not refuse to provide necessary medical treatment.

Further, the Complaint does not allege Defendants subjectively perceived facts from which to infer substantial risk of serious harm to Plaintiff. Defendant Parker, the initial medical professional to treat Plaintiff, came to the exact opposite conclusion as noted by his Medical Exam Report attached to the Complaint (Doc. No. 29, p 17). Parker treated Plaintiff, gave him Tylenol for pain, and deemed Plaintiff medically cleared to be "Released to Housing Unit" pending the x-ray to be taken on Monday. *Id.* These are not facts that can be construed, even liberally, to indicate a subjective perception by Defendant Parker that Plaintiff was at substantial risk of serious harm.

Similarly, Defendants Beightler and Fox visited Plaintiff over the weekend and, based on their actions and statements, did not perceive Plaintiff to be in any substantial risk of harm. As recounted in the Complaint, Defendant Fox considered and then discarded the possibility that Plaintiff was at substantial risk, stating, "if your jaw was broken, you wouldn't be able to speak right now." (Doc. No. 29, ¶14). Defendant Beightler, after speaking with Plaintiff, appears to have come to the same conclusion, indicating that an x-ray would be taken when an x-ray technician was available. This too does not support an inference that Defendant Beightler formed a subjective opinion that Plaintiff was at substantial risk of harm.

Instead, the plain facts of the Complaint show that Defendants did take the actions they subjectively believed were necessary given the nature of Plaintiff's injuries. Plaintiff was promptly taken to the OSU hospital on Monday morning as promised by Defendants Parker and Beightler (Doc.

9

No. 29, ¶ 13, 14) . The OSU Emergency Assessment attached to the Complaint verifies that Plaintiff was indeed transferred to the hospital for an x-ray at 9:45 on Monday morning (Doc. No. 29, p. 18), followed by surgery a day later.

Accordingly, Plaintiff has pled facts that Defendants were aware of his injury, but nowhere has he pled facts indicating Defendants possessed the subjective belief required for deliberate indifference.

### *Remaining Claims*

Plaintiff's remaining state law claims for violations of his Ohio constitutional rights, violations of his Ohio statutory rights, and intentional infliction of emotion distress are dismissed in light of the denial of Plaintiff's federal claims. A district court may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all the federal claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *see also Pinney Dock & Transp. Co. v. Penn Central Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) ("[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims."). As a general rule, if the claims over which a federal court has original jurisdiction are dismissed before trial, the state claims should be dismissed as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). This Court sees no reason to depart from the general rule in this case. Therefore Plaintiff's remaining claims are dismissed.

### *Remaining Motions*

Also pending is Plaintiff's Motion for Default Judgment against Defendant Beightler. Plaintiff has not shown that Defendant Beightler was properly served nor has Plaintiff objected to the Magistrate's recommendation. After conducting a *de novo* review, this Court adopts the Magistrate's recommendation to deny Plaintiff's Motion for Default Judgment (Doc. No. 43, p. 5-6).

Finally, in light of the dismissal of the Complaint, the remaining motions for Appointment of Counsel, Stay Discovery, and Strike Objection (Doc. Nos. 39, 50, 51) are denied as moot.

## CONCLUSION

Defendants' Motion to Dismiss is granted; Plaintiff's Motion for Default Judgment is denied; and the remaining Motions (Appointment of Counsel, Stay Discovery, and Strike Objection) are denied as moot.

IT IS SO ORDERED.

          s/ *Jack Zouhary*
          JACK ZOUHARY
          U. S. DISTRICT JUDGE

          September 13, 2010